## THE FERRERI.

(*District Court, E. D. New York.*   November 19, 1881.)

1. CONVERSION—JURISDICTION OF THE DISTRICT COURT.

   Where goods, that had been sold to be paid for on delivery, were shipped in the name of the vendors, a shipping receipt given to them, and a bill of lading subsequently given to the vendee, who then absconded, *held*, that upon the refusal of the master to give the vendors a bill of lading, they could recover against the vessel the value of the goods without a demand; and that, as the vessel was in navigable waters, the tort was maritime in its character, for which an action could be brought in the district court.

*W. W. Goodrich*, for libellants.

*L. Ullo*, for claimant.

BENEDICT, D. J.   The facts in this case are as follows:

In September last one Theodore Michel agreed, through a broker, to purchase of the libellants 167 barrels of resin, the resin to be shipped on the bark Ferreri in the name of the libellants, they to take the ship's receipt and deliver the same to Michel upon his paying for the goods.   Accordingly, the libellants directed Johnson & Hammond, the keepers of a yard where the libellants had resin stored, to deliver 167 barrels of resin to the bark Ferreri on their account.   Johnson & Hammond sent the goods to the bark, where they were received by the mate, who gave in return a shipping receipt stating the receipt of the goods in question in good order from Johnson & Hammond on board the bark Ferreri for account of Tolar & Hart.   After the goods had thus been placed on board the bark, Michel, who was agent for the bark in this port, procured the master to issue to him, as shipper, a bill of lading for the goods so delivered, and then absconded without paying the libellants for them, although payment had been demanded, accompanied by a tender of the shipping receipt.   After the departure of Michel, Tolar & Hart demanded of the master that he issue to them a bill of lading for the goods in question, accompanying the same with a tender of the shipping receipt.   The master refused, upon the ground that he had already issued a bill of lading for the goods to Michel, whereupon Tolar & Hart libelled the vessel.

Upon these facts it is plain to be seen that Tolar & Hart had no intention to part with their goods until the same were paid for.   This intention they carried into effect by causing the goods to be placed on board the vessel in their name, and by taking the shipping receipt for the goods as received by the vessel on their account.   The delivery of such a receipt to Tolar & Hart bound the ship-master to execute or withhold the bill of lading according to their direction, and left the title to the property unchanged.   *Brown* v. *Peabody*, 3 Kern. 121.   When, therefore, after Michel had absconded, the master refused to issue a bill of lading for the goods to Tolar & Hart, assign-

ing no other reason except that he had already given a bill of lading to Michel, he was guilty of converting the property. A formal demand for the return of the property would have been a vain act after the master had refused to give a bill of lading to the libellants, placing his refusal of the libellants' demand for a bill of lading upon the ground that he had already given a bill of lading for the goods to Michel. Such a refusal was equivalent to saying: "I have determined to transport this resin to Marseilles, and there deliver it to the holder of the bill of lading already issued to Michel." Such a refusal rendered a subsequent demand of the goods unnecessary.

Tolar & Hart, upon the master refusing under these circumstances to give them a bill of lading, could waive any right depending upon an implied contract on the part of the master to give them a bill of lading for their goods, then on board his vessel, and proceed for the tort. This right they can enforce in the admiralty. The goods were on board a vessel for the purpose of shipment. The locality was navigable water. The tort, therefore, was maritime in character, and within the jurisdiction of the admiralty. For such a tort the ship herself is bound. The goods were actually on board the vessel. The tortious act was that of the master of the vessel. In cases of affreightment the goods are bound to the vessel and the vessel to the goods. This vessel is, therefore, bound to these goods, and liable to the owners thereof for their loss, destruction, or conversion by the act or the neglect of the master of the ship.

I entertain no doubt, therefore, as to the *right* of the libellants to maintain an action *in rem* against this vessel to recover the value of the resin in question. The difficulty with the case, if any there be, arises out of the method of framing the libel. The averments of the libel are these:

That the libellants sold the resin to Michel to be delivered to the bark for the sum of $553.96, to be paid on delivery of the goods to the vessel and the production of the usual shipping receipt therefor; that the resin was delivered to said vessel and a shipping receipt therefor given to the libellants by the master; that by the custom of the port no bill of lading shall be made or delivered by the master except upon the surrender of the shipping receipt; that the master has given a bill of lading to Michel without a surrender of the receipt, and refused to give a bill of lading to the libellants; that the vessel is about to proceed to a foreign land, and if she be allowed to depart without giving the libellants a bill of lading and procuring the surrender of the bill of lading given to Michel, or giving indemnity against damage, the libellants will be remediless.

The prayer of the libel is as follows:

"Wherefore, the libellants pray that process in due form of law, according to the course and practice of this honorable court in cases of admiralty and maritime jurisdiction, may issue against said vessel, her tackle, apparel, and furniture, and that all persons having any interest therein may be cited to appear and answer all and singular the matters aforesaid; that they may be compelled to issue a bill of lading for said goods to these libellants and procure a surrender of the bill of lading given to said Michel, and may indemnify the libellants against all loss and damage by reason of the issuing of said bill of lading to said Michel; and that the said vessel may be condemned and sold, and the libellants paid any damages they may sustain in the premises, with interest and costs, and may have such other and further relief as to law and justice appertain.

No exception has been taken to the libel on the ground of inconsistency in the relief prayed for, and under such a libel it is open to the libellants to take any decree warranted by the facts that may be within the scope of his prayer. But it is said by the claimant the libel proceeds upon the theory of a right in the libellants to have a bill of lading of the goods, and therefore the action is simply an action for specific performance. The libel, however, contains facts sufficient to sustain a decree for conversion, and the prayer is, among other things, that the vessel be condemned and sold to pay any damages sustained by the libellants by reason of the premises. I am unable, therefore, to hold that the only right set up in the libel is the right to have a bill of lading.

Again, it is said, in behalf of the claimant, if the action be treated as an action for damages, the damages claimed are those arising from the failure to receive a bill of lading, and not damages for converting the resin. But, as already pointed out, the facts set forth make a case of conversion, and the general prayer is to be paid damages accruing to the libellants out of the premises. It cannot, therefore, be held that the method of framing the libel, objectionable as it certainly is, constitutes, in the absence of any exception, an insurmountable obstacle to treating the action as based upon a maritime tort. It is not seen, therefore, that any legal objection stands in the way of considering this case to be an action to recover damages for the conversion of the property in question, and as, upon the argument, the desire to have it so treated was expressed, that course will be pursued.

This view of the case renders it unnecessary to determine whether a proceeding *in rem* against the ship can be resorted to to compel the

master of the ship to give a bill of lading,—a question upon which something may be said on both sides. Equally unnecessary is it to consider what damages could be recovered by the libellants at this time, the vessel not having performed the voyage, and it being still possible for the vessel to deliver the goods to the real owner at the port of destination, (*The Idaho*, 5 Ben. 280; 93 U. S. 576,) if the case were to be treated as an action to recover the damages arising out of the breach of an implied contract to deliver the bill of lading to the holder of the shipping receipt.

I may, however, make a single remark in regard to the point made, that, under the circumstances of this case, the master was under no obligation to give a bill of lading to the libellants, because no contract to transport the goods was ever made with them, but with Michel.

The fact that a contract to transport this resin was made between the master and Michel, in pursuance of which the bill of lading to Michel was issued, by no means compels the conclusion that the only obligation resting upon the ship arises out of that contract. Such might have been the case if the goods, when shipped, had been the property of Michel; but Michel was neither the owner nor the shipper of the resin in question. This resin was received by the ship from Tolar & Hart, and a receipt given acknowledging the receipt on account of Tolar & Hart. So long as the shipping receipt remained in the possession of Tolar & Hart, the obligation to issue to them a bill of lading rested upon the ship. *Ellershaw* v. *Magniac*, 6 Exch. 570, note, shows that a shipper of goods shipping for a buyer can, nevertheless, get a bill of lading for himself. *Turner* v. *Trustees of Liverpool Dock*, 6 Exch. 543, shows that goods may be put on the buyer's ship with nothing said at the time, and nevertheless the seller may get the bill of lading delivered to him. See, also, *Falk* v. *Fletcher*, 18 C. B. (N. S.) 403; *Kreeft* v. *Thompson*, L. R. 10 Exch. 282. The last-mentioned case is direct authority for holding, in a case like this, that the master of this vessel could not rightfully refuse to sign the bill of lading which the libellants demanded.

There is still another aspect in which to view this case. By the maritime law, when goods are laden on board a vessel, the master is deemed to contract with the goods. *The Hyperion's Cargo*, 2 Low. 94. That contract enures to the benefit of the owner of the goods. In this case, therefore, it was open to the libellants, when Michel refused to pay for the goods, to claim the benefit of the contract made with the goods when they were put on board, part of which

contract was that a bill of lading should be delivered to the owner of the goods. It would seem, therefore, that upon the master's refusal to give the libellants a bill of lading, they became entitled, either to enforce the delivery of the bill of lading, or to bring their action for the damages caused by such refusal; or, at their option, to waive the contract and sue for a wrongful conversion of the property. But, however this may be, I entertain no doubt of their right to maintain an action for conversion, and in such action recover the value of their goods. That value is shown by the sum they agreed to take from Michel, to-wit, $553.96, and for that sum a decree will be entered herein.

The record shows that after the seizure of the vessel in this action the claimants procured her discharge from custody by giving a stipulation to perform any decree that might be entered herein, and at the same time depositing in court, subject to the order of the court, a bill of lading, duly executed, such as had been demanded by the libellants and refused by the master. This bill of lading must, of course, be returned to the claimants, and an order to that effect will form part of the decree.